**WO**                                                                                                                          JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Anthony Gregory LaPointe, | No. CV 11-2108-PHX-GMS (SPL) |
| Plaintiff, | **ORDER** |
| vs. |  |
| Sergeant Bienovidas et al., |  |
| Defendants. |  |

Plaintiff Anthony Gregory LaPointe brought this civil rights action under 42 U.S.C. § 1983 against three Arizona Department of Corrections (ADC) employees: Sergeant Benavidez,[1] Sergeant Moreno, and Correctional Officer (CO) Reyes (Doc. 12). Before the Court is Defendants' Motion to Dismiss for failure to exhaust administrative remedies (Doc. 43), which Plaintiff opposes (Doc. 47).

The Court will deny Defendants' motion.

**I.     Background**

Plaintiff's claim arose during his confinement at the Arizona State Prison Complex-Florence, Meadows Unit (Doc. 12 at 1, 3). In Count I of his First Amended Complaint, Plaintiff alleged that Benavidez threatened his safety in violation of the Eighth Amendment (id. at 3). Plaintiff claimed that on January 5, 2011, he was assaulted by other inmates, and

---

[1] In his First Amended Complaint, Plaintiff named "Bienovidas" as Defendant (Doc. 12). The correct spelling is Benavidez (see Doc. 35 at 1 n. 1).

while waiting for an ambulance, Benavidez told Plaintiff that he would place Plaintiff back on to the yard unless Plaintiff paid him $40 (id.). Plaintiff alleged that he was again placed back on to the yard, and on January 6 and 7, 2011, he was assaulted and stabbed by the same inmates (id.).

In Count II, Plaintiff alleged that Moreno violated Plaintiff's Eighth Amendment rights when he allowed inmates whom he knew had previously attacked Plaintiff back on to the yard (id. at 4).

And in Count IV, Plaintiff averred that Reyes violated Plaintiff's Eighth Amendment rights when he watched the attack on Plaintiff and failed to intervene (id. at 5A).[2]

Defendants now move to dismiss Plaintiff's claims on the ground that he failed to exhaust administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (Doc. 43).

## II. Exhaustion Legal Standard

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). A prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). There can be no absence of exhaustion unless a defendant demonstrates that applicable relief remained available in the grievance process. Brown v. Valoff, 422 F.3d 926, 936-7 (9th Cir. 2005). Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. And when considering disputed

---

[2]On screening, the Court dismissed Count III and Deal as a Defendant (Doc. 16).

- 2 -

1 issues of fact, a court has broad discretion as to the method used in resolving the dispute
2 because "there is no right of jury trial" as to an issue arising in a pre-answer motion. Ritza
3 v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988)
4 (quotation omitted).

**III.    Parties' Contentions**

    **A.    Defendants' Motion**

In support of their motion, Defendants submit the declaration of CO IV E. Sheridan, who was the Unit Grievance Coordinator at the Meadows Unit at the relevant time (Doc. 43, Ex. A, Sheridan Decl. ¶¶ 1-2). Sheridan states that the prison's grievance procedures are set forth in ADC Department Order (DO) 802, entitled "Inmate Grievance Procedure" (id. ¶ 7). Attached to Sheridan's declaration is the copy of DO 802 in effect when Plaintiff's claims arose and a copy of Director's Instruction (DI) 287, which amended portions of DO 802 (id., Attach. 1). Sheridan explains the steps in the inmate grievance procedure: (1) an inmate must try to resolve his complaint through informal means (id. ¶ 9, DO 802.02 § 1.1); (2) if not resolved, the inmate may file an informal complaint by Inmate Letter within 10 work days from the date of the action underlying the complaint (id., DO 802.02 § 1.2); (3) if not satisfied with the Inmate-Letter response, within 5 work days from that response, the inmate may file a Formal Grievance to the CO IV unit Grievance Coordinator (id., DO 802.02 § 1.4 & 802.03 § 1.1); (4) if not satisfied with the Deputy Warden's response to the Formal Grievance, within 5 work days from receipt of that response, the inmate may file an Inmate Grievance Appeal to the Warden (id., DO 802.02.04 § 1.1); and (5) if not satisfied with that response, within 5 work days of receipt of that response, the inmate may file an appeal to the ADC Director, whose response is final (id., DO 802.05 §§ 1.1-1.2, 1.8).

Sheridan avers that under DO 802, only one complaint per grievance is permitted; if an inmate includes multiple unrelated issues on a single form, the grievance is rejected and returned as unprocessed (id. ¶ 8, DO 802.03 § 1.2).

Sheridan states that on February 17, 2011, she received six Formal Grievances from Plaintiff about the January 5, 2011 assault (id. ¶ 10). Sheridan avers that she returned all six

1 Formal Grievances as unprocessed because Plaintiff failed to follow the established
2 grievance procedures (id. ¶ 11). According to Sheridan, Plaintiff failed to first attempt to
3 resolve his complaints through informal means; he was out of time frames; and he submitted
4 multiple grievances about the same incident (id.). Sheridan states that in his Formal
5 Grievances, Plaintiff claims to have filed informal grievances with his CO III on January 14,
6 2011; however, when Sheridan asked Plaintiff's CO III—Fansler—whether Plaintiff had
7 submitted any Inmate Letters to her regarding the January 5, 2011 incident, Fansler informed
8 Sheridan that she received no informal resolution attempts from Plaintiff (id. ¶ 12).

9 Sheridan further avers that on March 17, 2011, he received several Formal Grievance
10 Appeals from Plaintiff, all dated March 6, 2011 (id. ¶ 13). Sheridan returned the Grievance
11 Appeals to Plaintiff as unprocessed and advised him that he could not appeal an unprocessed
12 grievance (id.).

13 In their motion, Defendants rely on this evidence to argue that Plaintiff failed to timely
14 attempt informal resolution prior to filing his Formal Grievances as evidenced by his failure
15 to include copies of his informal attempts with his Formal Grievances (Doc. 43 at 6-7).
16 Defendants further argue that the record shows that Plaintiff did not submit any final appeals
17 to the Director's level any time between January 1, 2011, and April 18, 2013 (id.). They
18 conclude that, for these reasons, the Court should dismiss Counts I, II and IV, enter judgment
19 in their favor, and award attorneys' fees pursuant to 42 U.S.C. § 1988 (id.).

20      **B.    Plaintiff's Response**[3]

21 In opposition, Plaintiff contends that Defendants attempt to rely on incomplete records
22 and conclusory assertions to support their motion but that they fail to satisfy their burden to
23 prove nonexhaustion (Doc. 47 at 1-2). Plaintiff submits his declaration and copies of Inmate
24 Letters and a Final Grievance Appeal to the Director, which he notes are the very documents
25 Defendants claim do not exist (id. at 15, Exs. 1-2; Doc. 48).

26

---

27 [3]The Court issued the Notice required under Wyatt, 315 F.3d at 1120 n. 14, which
28 informed Plaintiff of his obligation to respond and the evidence necessary to successfully rebut Defendants' contentions (Doc. 44).

1    Plaintiff submits that, in accordance with the ADC grievance procedures, he initiated
2 the grievance process by timely filing his informal grievances on January 13, 2011 (Doc. 47
3 at 4). He refers to copies of his informals that are attached to his original Complaint, and he
4 submits copies with his response (id., Ex. 1). Plaintiff avers that in his Formal Grievances,
5 he clearly explained that he submitted informal resolutions but did not receive a response
6 from the CO III (id. at 7, Ex. 3). He further states that he repeated this information—that he
7 received no response to his informals—in his subsequent Grievance Appeals (id., Ex. 3).

8    Plaintiff avers that he informed Deputy Warden Lao that Benavidez received
9 Plaintiff's informal grievances, threatened him, and instead of giving the informals to the CO
10 III, Benavidez destroyed them (id. at 8; see Doc. 48, Pl. Decl. ¶¶ 3-6). Plaintiff notes that
11 at the relevant time, following the assault, he was housed in the Complex Detention Unit
12 (CDU) (or "lockdown"), and was fully dependent on ADC staff to deliver his grievance
13 documents to the CO III (Doc. 47 at 11, 13). Plaintiff submits that once Benavidez was in
14 possession Plaintiff's informals, they were out of Plaintiff's control, and Benavidez had a
15 duty to forward the informals (id. at 11).

16    As to Defendants' second argument—that Plaintiff failed to file an appeal to the
17 Director between January 1, 2011, and April 18, 2013—Plaintiff proffers a copy of his final
18 Grievance Appeal, which was signed and submitted on April 3, 2011 (id. at 5, Ex. 2 (Doc.
19 47 at 23)). He states that he also mailed a copy of this final grievance appeal to the Director
20 because CO IV Sheridan was preventing his grievance documents from going forward (id.).

21    Plaintiff maintains that he did everything reasonable to file grievances and complete
22 the grievance process in accordance with the applicable procedures (id. at 8-9). He argues
23 that Defendants' failure to respond to his initial informal resolutions, as well as their failure
24 to respond to the final Director's level appeal, rendered the grievance process unavailable (id.
25 at 14-15).

26   **C.   Defendants' Reply**

27    Defendants argue that Plaintiff's claim that Benavidez destroyed his informal
28 resolutions is belied by the fact that he had copies of his "destroyed" informals and attached

- 5 -

1 them to his original Complaint and his response memorandum (Doc. 49 at 2). Defendants
2 assert that Plaintiff was required under DO 802 to provide copies of these informals to the
3 CO IV, and he failed to do so (id.). According to Defendants, had Plaintiff provided these
4 copies to CO IV Sheridan with his Formal Grievances, those Formal Grievances would not
5 have been unprocessed because he would have followed the rules and shown his attempts to
6 resolve his complaints informally (id.). Defendants argue that Plaintiff's failure to follow
7 the grievance policy means that he failed to properly exhaust (id. at 3). They rely on the
8 Ninth Circuit's decision in Griffin, which, according to Defendants, held that the plaintiff
9 failed to properly exhaust when he did not advise officials who reviewed his grievance that
10 they were mistaken about a material fact that rendered their responses inadequate (id., citing
11 557 F.3d at 1120). Defendants submit that this Court should follow Griffin and find that
12 Plaintiff's failure to provide copies of his informal resolutions at the time his grievances were
13 reviewed—and thereby inform officials that he had attempted to resolve his complaint
14 informally—constitutes a failure to properly exhaust (id.).

15 Defendants also assert that, contrary to Plaintiff's allegations, Benavidez did not
16 collect Plaintiff's mail or grievances while he was housed in CDU; rather, all grievances and
17 other inmate forms were collected by the CO II (id. at 3-4).[4]

18 Finally, Defendants argue that there is no evidence that Plaintiff submitted his
19 informals—which he has now produced—during the grievance process (id.). They submit
20 a declaration from Plaintiff's CO III at the time—Fansler—who avers that she did not receive
21 any of the January 13, 2011 Inmate Letters from Plaintiff (id., Ex. B, Fansler Decl. ¶ 11).

---

[4] Defendants assert that the Court should not consider Plaintiff's allegation that Benavidez destroyed his grievances because this allegation was not raised in his Complaint, and they cite to Cedano-Viera v. Ashcroft, 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003), to argue that Plaintiff's allegation is not properly before the Court and should be disregarded (Doc. 49 at 2 n. 1). Defendants' argument is misguided; the footnote in Cedano-Viera states that new issues raised in a *reply brief* that were not raised in the party's *motion* should not be considered. 324 F.3d at 1066 n. 5. Moreover, exhaustion is not a pleading requirement, and Plaintiff's response memorandum was the only vehicle in which to raise his arguments against Defendants' failure-to-exhaust claim. See Jones, 549 U.S. at 216.

- 6 -

**IV.    Analysis**

Generally, exhaustion requires proper completion of each step in the agency's grievance procedure, see Woodford, 548 U.S. at 92; however, completing every step is not required "when circumstances render administrative remedies 'effectively unavailable.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (citing Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010)). The Ninth Circuit has specifically held that an inmate need not proceed in the grievance process if he has been reliably informed that no remedies are available, Brown, 422 F.3d at 935, and that administrative remedies are effectively unavailable where prison officials improperly screen in inmate's grievance. Sapp, 623 F.3d at 823.

    **A.    Informal Resolutions/Inmate Letters**

The first question is whether Plaintiff properly initiated the grievance process by submitting informal resolutions related to his claim. Plaintiff proffers copies of three Inmate Letters dated January 13, 2011, that are related to the January 5, 2011 assault and subsequent events (Doc. 47, Ex. 1). Defendants submit that there is no evidence Plaintiff ever submitted these Inmate Letters (Doc. 49 at 4).

The Court notes that all other grievance documents—the Formal Grievance and Grievance Appeal forms—contain a box in the upper right hand corner for the officer who receives the form to document his name, title, badge number, and date of receipt; however, the Inmate Letter form does not contain this box or any area for such documentation (see Doc. 47, Exs. 1-3). Defendants created the forms, and Plaintiff is required to use them in the grievance process. Certainly, Defendants could have included a box to document receipt information on the Inmate Letter form, and their failure to do will not be held against Plaintiff.

Defendants assert that, according to ADC records, Plaintiff did not timely submit any informal resolutions prior to filing his Formal Grievances (Doc. 43 at 6-7). But they also argued in their motion that, according to ADC records, Plaintiff did not submit any final appeal to the Director between January 11 and April 2013 (id. at 7). Yet Plaintiff submitted

1   the copy of an April 3, 2011 Director's level appeal reflecting—in the top right hand
2   corner—that it was received on April 3, 2011 by CO II J. Gatante, badge number 8144 (Doc.
3   47, Ex. 2 (Doc. 47 at 23)). In their reply, Defendants do not challenge this appeal document
4   or dispute that it was submitted (see Doc. 49). Consequently, in this instance, the ADC
5   records do not establish that Plaintiff did not file informal resolutions.

6   Defendants do not dispute that at the relevant time, Plaintiff was housed in CDU, and
7   they explain that any Inmate Letters would have been collected by the CO II assigned to the
8   grave yard shift, and the CO II would have brought the Inmate Letters to the CDU control
9   room for delivery to the CO III (Doc. 49 at 3). Defendants submit a declaration from the CO
10  III, who avers that she did not receive Plaintiff's Inmate Letters (Doc. 49, Ex. B, Fansler
11  Decl. ¶ 7). But they do not produce a declaration from the CO II assigned to the grave yard
12  shift January 13 or 14, 2011, who would have picked up Plaintiff's Inmate Letters. As
13  Plaintiff states, once his grievance documents are picked up, they are out of his control.

14  In support of his claim that he filed informal resolutions, Plaintiff points to his Formal
15  Grievances. The Formal Grievance form asks the inmate to explain "[w]hat informal
16  attempts have been made to resolve the problem?" (Doc. 47, Ex. 3). On each of his Formal
17  Grievances, Plaintiff wrote that he submitted an informal grievance on January 14, 2011, but
18  received no response from the CO III (id.). Defendants counter that had Plaintiff actually
19  submitted the Inmate Letters, he would have been able to provides copies of them with his
20  Formal Grievances instead of waiting until this lawsuit to reveal their existence (Doc. 49 at
21  2-3). They contend that the grievance policy required Plaintiff to provide copies of his
22  Inmate Letters to CO IV Sheridan when he filed his Formal Grievances; however, they do
23  not cite to a specific provision within DO 802 that sets forth this requirement, and, upon
24  review of the policy, the Court finds no such requirement (id. at 2).[5] Thus, Plaintiff's failure

---

[5]Under the DO 802 section governing the Formal Grievance Process, the provisions setting forth the inmate's requirements and responsibilities are as follows:
1.1   An inmate may file a Formal Grievance should he/she be unable to resolve their complaint informally. The inmate has five work days from receipt of the response from the CO III to submit a Formal Grievance to the Grievance Coordinator using the Inmate

- 8 -

to attach copies of his Inmate Letters to his Formal Grievance does not prove that he never filed his Inmate Letters.

The Court finds that, given Plaintiff's proffered copies of January 2011 Inmate Letters and his contemporaneous reference to them in his February 2011 Formal Grievances, Defendants have failed to prove that Plaintiff did not file informal resolutions.

### B.    Formal Grievances

Defendants suggest that, assuming Plaintiff submitted his Inmate Letters prior to filing his Formal Grievances, when he received the February 17, 2011 response from CO IV Sheridan informing him that his grievances were unprocessed because he did not submit documentation of an informal resolution, Plaintiff was obligated to advise Sheridan that he was "mistaken about a material fact that rendered [the response] inadequate or insufficient[,]" and provide the Inmate Letters to Sheridan (Doc. 49 at 3, citing Griffin, 557 F.3d at 1120).

In Griffin, the inmate fell when trying to reach his top bunk, and he filed a grievance complaining that because he took medication that affected his depth perception, he should have a ladder or some sort of permanent step to use to reach his bunk. Id. at 1118. While his grievance was pending, the prison nurse issued an order for a lower-bunk assignment; however, the inmate claimed that prison staff disregarded the nurse's order. Id. at 1118-19. The inmate appealed his grievance but did not mention that prison staff disregarded the medical order. Id. at 1119. Prison officials responding to the appeals concluded that the problem was solved by the nurse's order and no further action was needed. Id. The defendants in the case argued that the inmate failed to properly exhaust because his grievance was not factually specific enough in that he did not grieve that prison staff were deliberately

---

Grievance, Form 802-1.
1.2    The inmate shall place a single complaint with related issues on a single Inmate Grievance form. If the inmate includes multiple unrelated issues on a single form, the submission of the grievance shall be rejected and returned as unprocessed.
1.3    The inmate shall submit the Inmate Grievance form to the unit CO IV unit Grievance Coordinator  (Doc. 43, Attach. 1, DO 802.03 §§ 1.1-1.3).

- 9 -

indifferent to his medical needs—an allegation that formed the basis of the subsequent Eighth Amendment complaint filed in federal court. Id. at 1119-20. The Court held that the inmate's grievance was sufficient because it alerted prison officials to a problem and the inmate was not required to allege deliberate indifference or any other legal theory. Id. at 1120. But it found that the inmate nonetheless failed to exhaust properly because he failed to notify officials that staff was not complying with the medical order; thus, he did not provide enough information "to allow prison officials to take appropriate responsive measures." Id. at 1121 (quoting Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004)).

The Court finds that Griffin is not analogous to the instant action. Griffin concerned the substance of the inmate's grievance and whether he provided sufficient information for officials to respond appropriately. There is no claim that Plaintiff provided insufficient information in his grievances such that officials were unable to respond appropriately to the substance of his complaint. Instead of Griffin, Sapp, which held that remedies are effectively unavailable where prison officials improperly screen a prisoner's grievance, is the applicable precedent. 623 F.3d at 823.

To fall within the exception set forth in Sapp, there must be evidence (1) that Plaintiff actually filed a grievance or grievances that, if pursued through all levels of the grievance process, would have sufficed to exhaust his claim and (2) that prison officials screened his grievances for reasons inconsistent with or unsupported by the grievance policy. Id. at 823-24. As discussed above, the record supports that Plaintiff filed Inmate Letters, and there is no dispute that he filed Formal Grievances regarding his complaints against Defendants. Plaintiff's grievances clearly put the prison on notice of the problems for which he sought redress; thus, they were sufficient to exhaust his claims if pursued through each step of the process. See Griffin, 557 F.3d at 1120.

The record also supports that prison officials improperly screened Plaintiff's Formal Grievances. There were three reasons given for the rejection of Plaintiff's grievances: failure to provide documentation of informals, out of time frames, and multiple grievances filed about the same incident (Doc. 43, Attach. 3 (Doc. 43-1 at 31)). Because the grievance policy

did not require Plaintiff to submit documentation of his informals with his Formal Grievances, this reason for rejection is unsupported by the policy.

The "out of time frames" ground for rejection is also unsupported by the grievance policy. In his Formal Grievances, Plaintiff explained that he submitted his informal resolutions on January 14, 2011, which was within 10 work days of the event giving rise to his complaint (see Doc. 43, Attach. 1, DO 802.02 § 1.2). According to the grievance policy, prison officials had 15 work days—until February 7, 2011—to respond, but failed to do so. Plaintiff then had five work days from that response deadline—until February 14, 2011—to file his Formal Grievances (id., DO 802.03 § 1.1).[6] He filed his Formal Grievances on February 10, 2011 (Doc. 47, Ex. 3). In short, Plaintiff's initial informal resolutions were timely filed, and he complied with all of the subsequent time frames set forth in the grievance policy.

The third basis for rejecting Plaintiff's grievances was that he violated policy by "filing multiple grievances regarding the same incident," and the response recited that portion of the grievance policy he violated; "[a]n inmate abuses the Inmate Grievance Procedure when he . . . [f]iles multiple grievances on the same issue(s) at the same time or without waiting for a response" (Doc. 43, Ex. A, Attach. 3, citing DO 802.07 §§ 1.1, 1.1.2 (Doc. 43-1 at 31)). As Sheridan stated in her declaration, however, the grievance procedure directs that an inmate "shall place a single complaint with related issues on a single inmate Grievance form. If the inmate includes multiple unrelated issues on a single form, the submission of the grievance shall be rejected and returned as unprocessed" (id., Attach. 1, DO 802.03 § 1.2). A review of Plaintiff's grievance documents shows that he filed a separate Formal Grievance for each officer allegedly involved in the January 5, 2011 assault or subsequent events on January 6 or 7, 2011 (Doc. 47, Ex. 3). Each grievance sets forth a different complaint against a different officer and is specific to that particular officer's distinct and

---

[6] The grievance policy provides that if the time for a response expires, the inmate grievant may move tot he next step in the process (Doc. 43, Ex. A, Attach. 1, DO 802.01 1.11).

- 11 -

allegedly improper conduct. For example, the grievance against Reyes concerns her conduct during the January 5, 2011 assault, when she allegedly failed to intervene when Plaintiff was attacked (Doc. 47, Ex. 3 (Doc. 47 at 26)). The grievance against Benavidez complained that he placed Plaintiff back on the yard after the January 5 assault and that he was threatening Plaintiff (id., Ex. 3 (Doc. 47 at 28)). In light of the grievance policy's admonition to limit each grievance to a "single complaint," the Court cannot conclude that Plaintiff's separate Formal Grievances constitute a violation of the provision prohibiting inmates from filing "multiple grievances on the same issue" (see Doc. 43, Attach. 1, DO 802.07 § 1.1.2).

In short, none of the reasons for rejecting Plaintiff's grievances are supported by the ADC grievance policy.

**C.     Appeals**

Despite the rejection of his Formal Grievances, Plaintiff attempted to proceed with the administrative process by filing Inmate Grievance Appeals. Plaintiff's Grievance Appeals were returned unprocessed, and the March 17, 2011 appeal response informed him that "he could not appeal a grievance which had been returned to him as unprocessed because the underlying grievance was not a valid grievance" (Doc. 43, Ex. A, Sheridan Decl. ¶ 13). In Sapp, the Ninth Circuit recognized that repeated rejections of an inmate's grievance at lower levels of the grievance process may give rise to a reasonable good faith belief that remedies are effectively unavailable, in which case, exhaustion may be excused. See Sapp, 623 F.3d at 826. Here, although Defendants assert in their briefing that Plaintiff could have corrected his grievances by providing copies of his informals to CO IV Sheridan, neither the February 17, 2011 grievance response nor the March 17, 2011 appeal response informed him of this option or provided any instruction as to how to obtain the relief he sought or how to appeal the decision. See id. (finding no basis for the plaintiff to believe remedies were unavailable because the screening responses instructed him how to obtain the medical care he sought and how to appeal the denial of care). Considering the responses to his Formal Grievances and Grievance Appeals, it would have been reasonable for Plaintiff to believe that no remedies remained available.

- 12 -

Nonetheless, Plaintiff attempted to complete the administrative procedures by submitting a final Director's level appeal on April 3, 2011 (Doc. 47, Ex. 2 (Doc. 47 at 23)). As mentioned, Defendants do not dispute that this appeal was submitted.

There must be "a good-faith effort on the part of inmates to exhaust a prison's administrative remedies as a prerequisite to finding remedies effectively unavailable." Albino v. Baca, 697 F.3d 1023, 1035 (9th Cir.2012); see Sapp, 623 F.3d at 823-34 (to fall within an exception to exhaustion requirement, "a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted").  Plaintiff has shown that he attempted to complete each step in the ADC grievance process, despite rejections of his grievances on grounds inconsistent with the grievance policy.  The Court therefore finds that Plaintiff completed each step in the grievance process, or, alternatively, pursuant to Sapp, the screening of Plaintiff's Formal Grievances rendered administrative remedies effectively unavailable.  Defendants' Motion to Dismiss will be denied.

**IT IS ORDERED that** the reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss (Doc. 43), and the Motion is **denied**.

DATED this 9th day of July, 2013.

*A. Murray Snow*
G. Murray Snow
United States District Judge